# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | |
| ) | |
| vs. ) | NO. 2:13-CR-79 |
| ) | (2:14-CV-176) |
| JON ERIK LILLY, ) | |
| ) | |
| Defendant/Petitioner. ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) the "Motion to Vacate and Set-A-Side or Correct A Sentence Under 28 Section 2255 and Under 18 Section 3553," filed by Jon Erik Lilly on May 27, 2014 (DE #30); and (2) the "Movant's Motion to Strike Respondent's Sur-Reply," filed by Jon Erik Lilly on October 2, 2014 (DE #38). For the reasons set forth below, the motion to strike is **GRANTED** and the section 2255 motion is **DENIED.** Further, this Court declines to issue Defendant a certificate of appealability. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Jon Erik Lilly, #12722-027, Forrest City FCI - 9000 - Low, Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 9000, Forrest City, AZ 72336, or to such other more current address that may be on file for Lilly.

BACKGROUND

On June 11, 2013, a two-count Information was filed against Defendant, Jon Erik Lilly ("Lilly"). Lilly was charged with two counts of receipt of child pornography, in violation of 18 U.S.C. section 2252(a)(2). (DE #1). The information was filed together with a signed plea agreement calling for a binding sentence of 144 months, pursuant to Rule 11(c)(1)(c). (DE #2). This Court, however, will not accept a plea agreement with a binding term of imprisonment. Accordingly, the plea agreement was amended to reflect that the parties agreed that a sentence of 144 months was appropriate in this case, but this Court was not bound by their agreement. (DE #7).

The plea agreement also contained the following wavier:

> I understand that the law gives a convicted person the right to appeal the conviction and sentence (including any restitution) imposed; I also understand that no one can predict the precise sentence that will be imposed and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offenses as set forth in this plea agreement; with this understanding and in consideration of the Government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction or the sentence imposed, including the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, Unites States Code, Section 3742 or any post-conviction proceeding, including but not

2

>     limited to, a proceeding under Title 28,
>     Unites States Code, Section 2255.

(DE #7, ¶ 7(e)).

Further, Defendant agreed that his attorney had "done all that anyone could do to counsel and assist [him]," that he was offering his guilty plea "freely and voluntarily and of [his] own accord," that "no promises [had] been made to [him] other than those contained in [the] agreement," and that he had not been "threatened in any way by anyone to cause [him] to plead guilty in accordance with [the] agreement." (DE #7, ¶¶ 10-11).

This Court held a change of plea hearing on June 18, 2013. (DE ##10, 32). When asked whether he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by Mr. Sanchez as [his] attorney," Lilly replied "yes." (DE #32 p. 8). After Lilly read through paragraph 7 of his plea agreement, the Court asked him whether he read it previously, understood it, agreed with it, and was asking the Court to approve it. Lilly answered in the affirmative to each of these questions. (DE #32., p. 11). Lilly acknowledged repeatedly that he agreed with the individual and collective terms of the plea agreement and confirmed that he wanted to plead guilty under the agreement. (DE #32, pp. 11-48).

The Court informed Lilly that, for each count he was pleading guilty to, he was facing "up to 20 years in jail, up to life supervised release, a $250,000 fine or a combination of both jail

time and fine time [sic], full restitution, full forfeiture and a $100 special assessment," and Defendant answered that he understood. (DE #32, pp. 15-16). Additionally, the Court advised Lilly that "[t]he least you could get would be five years in jail, no fine, five years of supervised release, no forfeiture, but you still would have full restitution and a $100 special assessment," and Lilly indicated that he understood. (DE #32, p. 16).

The Court also confirmed that Lilly understood that the Court would ultimately decide Lilly's sentence and that neither the Government's recommendations nor the Guidelines were binding. (DE #32, pp. 21-31). This included clear notification that the Government's recommendation that Lilly be sentenced to a term of imprisonment of 144 months was not binding on the Court. (DE #32, pp. 18-21). The following exchange occurred:

> Q: Second nonbinding recommendation, the government and you agree to recommend to the Court that your sentence in this case should be a sentence of 144 months, and you feel that to be fair and reasonable for all of the facts of the case and also for the different factors that are under Title 18, United States Code, Section 3553(a). Do you understand that?
>
> A: Yes, I do.
>
> Q: Who makes the final decision as to what your sentence may be?
>
> A: You do, Your Honor.
>
> Q: And you understand that I may agree with you and I may not?
>
> A: Yes, I do.

4

> Q: In fact, the reason that the – your attorney alluded to it, that the other plea agreement was not accepted, is because I will not allow a plea agreement that dictates what your sentence is going to be. That's my discretion. Do you understand that?
>
> A: Yes, Your Honor.
>
> Q: Are you in agreement with that?
>
> A: I am.
>
> Q: Okay. And you understand that I may agree with you and I may not?
>
> A: Yes.

(DE #32, pp. 23-24).

During the hearing, this Court questioned Lilly extensively about his voluntary waiver of his right to appeal, including the following excerpts from that colloquy:

> Q: Let's go on to subparagraph (c). Mr. Lilly, that deals with appeals. Do you understand that in all criminal cases a defendant has a right to appeal his conviction and/or sentence in a case?
>
> A: Yes, Your Honor.
>
> Q: In this case you have agreed that I have the jurisdiction and authority to sentence you up to the maximum provided for by the statute. You remember you and I talked about that? That's 20 years in jail, a fine of up to $250,000 or a combination of both of those, up to life supervised release, full restitution and a $100 special assessment on each of Counts One and Two of the information?
>
> A: Yes, Your Honor.
>
> Q: What you're basically doing in this paragraph,

5

Mr. Lilly, is you're giving up all of your rights to an appeal, either the manner in which you were found guilty or any sentence that you may receive. Do you understand that?

A: Yes, Your Honor.

Q: That includes incompetence of counsel except as it relates to this waiver and/or its negotiation. Do you understand that?

A: Yes, Your Honor.

Q: Do you understand that the government is not giving up their rights to an appeal?

A: Yes, Your Honor.

Q: Down the road, if you don't like the sentence that I gave you, you feel that I gave you a sentence that was too harsh or you don't like some of my rulings, you're not going to be able to go back to Mr. Sanchez and say, Mr. Sanchez, I want to appeal, because for all practical purposes, you've given up all of your rights to an appeal. Do you understand that?

A: Yes, Your Honor.

Q: There's some you can't give up, like jurisdiction. But for all practical purposes, you're giving them all up. Do you understand that?

A: Yes, Your Honor.

Q: You sure this is what you want to do?

A: Yes.

Q: Did you talk to your attorney about it before making this decision?

A: Yes.

Q: Did he answer all of your questions?

A: Yes.

> Q: Are you doing it knowingly and voluntarily?
>
> A: I am.
>
> Q: And are you asking me to approve it as part of your plea agreement?
>
> A: I am.

(DE #32, pp. 26-28).

On September 26, 2013, the Court sentenced Lilly to a term of imprisonment of 144 months. (DE #26). Judgment was entered on October 1, 2013. (DE #27). On March 5, 2014, Lilly sought leave to file an untimely notice of appeal. (DE #28). His motion was denied, but this Court noted that the denial would not prevent him from filing a timely section 2255 petition. (DE #29).

Lilly filed the instant motion under section 2255 on May 27, 2014, setting forth several arguments. He claims that his plea was not made knowingly and voluntarily because his counsel was ineffective in that he failed to do a reasonable investigation into the facts and the law and to develop a defense. In fact, Lilly now claims that, despite his admissions at the change of plea hearing, he is innocent because the pictures he possessed do not constitute child pornography within the meaning of the law. Lilly also claims that his counsel was ineffective at sentencing by failing to seek mitigating factors (such as the sexual maturity of the victim and the fact that she took and distributed the photographs herself) and failing to do any research regarding sentences in similar cases, leading to a sentencing disparity. Lilly further claims

that his counsel led him to believe he could participate in Bureau of Prisons ("BOP") programs that would make him eligible for a camp, but that was not true - he is not eligible. He further claims that he asked his counsel to file an appeal but his counsel refused.

This Government filed a response brief and Lilly filed a reply brief. The Government also filed a sur-reply. Lilly has moved to strike that reply because the Government failed to obtain leave of court to file the sur-reply. (DE #38). Both the 2255 motion and the motion to strike are ripe for adjudication.

DISCUSSION

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus motion pursuant to 28 U.S.C. section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

A section 2255 motion is neither a substitute for nor recapitulation of a direct appeal. *Id.; Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford*, 975 F.2d at 313. Additionally, aside from demonstrating "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a section 2255 petitioner may alternatively pursue such errors after demonstrating that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996).

In assessing Lilly's motion, the Court is mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (a "pro se complaint, 'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers'") (quoting *Haines v. Kerner*, 404 U.S. 519 (1972)); *Brown v. Roe*, 279 F.3d 742, 746 (9th Cir. 2002) ("pro se habeas petitioners are to be afforded 'the benefit of any doubt'") (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)). In other words:

> The mandated liberal construction afforded to pro se pleadings "means that if the court can reasonably read the pleadings to state a valid claim on which the [petitioner] could prevail, it should do so despite the [petitioner's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999) (habeas petition from state court conviction) (alterations in original) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Id.* Here, the Court assessed Lilly's claims with these guidelines in mind.

Motion to Strike

Lilly argues that the rules do not allow for a sur-reply and that, at a minimum, the Government should have sought leave of court prior to filing its sur-reply. Lilly is correct. Rule 5(c) of the rules governing section 2255 proceedings makes provision for a response when a judge so orders, and a reply to any response within a time fixed by the judge. Because the Government did not seek leave to file a sur-reply, the motion to strike is **GRANTED.**

Each of Lilly's Claims are Waived

The Seventh Circuit has recognized the validity of plea agreement waivers and will enforce the waiver unless there is a claim that the waiver was entered into involuntarily or that the waiver was a result of the ineffective assistance of counsel during the negotiation of the waiver. In *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999), the Seventh Circuit held that only two claims could be raised on a section 2255 motion by an individual who waived his right to appeal: (1) the defendant received ineffective assistance of counsel in negotiating the waiver; or (2) that the waiver was not knowingly and voluntarily made. *Jones* stated that courts should be:

> [m]indful of the limited reach of this holding, we reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver.

*Id.* at 1145. In *Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000), the Seventh Circuit applied its holding in *Jones* to bar an ineffective assistance of counsel claim that related only to the petitioner's performance with respect to sentencing. The Court found that "[b]ecause the challenge has nothing to do with the issue of a deficient negotiation of the waiver, [petitioner] has waived his right to seek post-conviction relief." *Id.* Additionally, the Court stated that the following analysis should be considered in determining whether a claim has been waived:

11

> can the petitioner establish that the waiver
> was not knowingly or voluntarily made, and/or
> can he demonstrate ineffective assistance of
> counsel with respect to the negotiation of the
> waiver?

*Id.*

It is undisputed that in his plea agreement, Lilly waived his right to appeal or contest his conviction and sentence "to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under . . . Title 28, United States Code, Section 2255." (DE #7, ¶ 7(e)).

This Court is satisfied that Lilly knowingly and intelligently waived his right to seek post-conviction relief. *See, e.g., United States v. Davis*, 348 F. Supp. 2d 964, 966 (N.D. Ind. 2004) (finding, under a similar section 2255 waiver, that defendant knowingly and intelligently waived his right to file a section 2255 motion). To the extent that Lilly now argues to the contrary, "[s]elf-serving statements offered after the plea hearing generally fall in the face of contradictory voluntary statements made by the defendant during a plea hearing - the latter are presumed to be true." *United States v. Mosley*, No. 93-1829, 1994 WL 503016, at *3 (7th Cir. Sept. 14, 1994) (citing, *inter alia, United States v. Scott*, 929 F.2d 313, 315 (7th Cir. 1991) ("To allow [defendant] to withdraw his plea because of secret expectations that he harbored in the face of his directly contradictory sworn testimony would

12

undermine the strong societal interest in the finality of guilty pleas.")). As set forth by the Court earlier in this opinion, Lilly repeatedly testified during his hearing that he was satisfied with his counsel's performance, that he was knowingly and voluntarily pleading guilty, and that he understood the charges against him and the possible sentence he was facing. As such, the Court is satisfied that he knowingly and intelligently entered into the plea agreement.

Furthermore, none of Lilly's claims of ineffective assistance relate directly to the waiver or its negotiation. He claims that his counsel did not investigate the facts or the law adequately. Additionally, if his counsel had investigated the facts and the law adequately, counsel would have discovered that Lilly was innocent because the pictures did not constitute child pornography. He further claims that, even if guilty, an investigation by his attorney would have revealed that an appropriate sentence for the alleged offense is much smaller than that called for by the plea agreement. He complains of his counsel's failure to make certain arguments at sentencing. And, he complains that he is not eligible for certain BOP programs that his counsel led him to believe he could participate in. Finally, he complains that his counsel did not file an appeal on his behalf even after he requested that the

appeal be filed.[1]  None of these arguments relate directly to the waiver or its negotiation.

Although a showing of actual innocence could overcome the waiver provision, Lilly has not made a colorable showing that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *See Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)); *see also Murray v. Carrier*, 477 U.S. 478, 496 (1986) (requiring a post-conviction petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."). Lilly argues that the images at issue did not constitute pornography, but this is directly contrary to his testimony at the change of plea hearing, where he conceded that the images were pornographic and involved sexually explicit conduct. (DE #32 at 41-42, 44-47). Moreover, the descriptions of the images found in the presentence investigation report leave little doubt that a reasonable juror could indeed find the images constitute "sexually explicit conduct," as defined in 18 U.S.C. § 2256(2)(A)(v). (DE #20, pp. 9-10, describing a close-up image of Jane Doe 1's vagina, an image where Jane Doe 1 is nude and holding

---

[1] While many circuits have found that a waiver provision does not prevent a claim of ineffective assistance based on failure to file an appeal, the Court of Appeals for the Seventh Circuit has found such claims waivable. *See Nunez v. United States*, 546 F.3d 450 (7th Cir. 2008)("Instead of being obliged to follow his client's (latest) wishes, however unreasonable they may be, a lawyer has a duty to the judiciary to avoid frivolous litigation-and an appeal in the teeth of a valid waiver is frivolous."); *see also Dowell v. United States*, 694 F.3d 898 (7th Cir. 2012).

a dildo above her vagina, and an image of Jane Doe 4 nude in front of a mirror showing her breasts and vagina). Lilly has not claimed that the descriptions of the images found in the presentence investigation report are inaccurate. Accordingly, each and every one of Lilly's arguments are waived.

Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Lilly has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued.

CONCLUSION

For the aforementioned reasons, For the reasons set forth below, the motion to strike is **GRANTED** and the section 2255 motion is **DENIED.** Further, this Court declines to issue Defendant a certificate of appealability. The Clerk is **FURTHER ORDERED** to distribute a copy of this order to Jon Erik Lilly, #12722-027, Forrest City FCI - 9000 - Low, Federal Correctional Institution, Inmate Mail/Parcels, P.O. Box 9000, Forrest City, AZ 72336, or to such other more current address that may be on file for the Petitioner.

**DATED: February 26, 2016**          /s/ RUDY LOZANO, Judge
                                      **United States District Court**